## STATE v. BROWN.

1. EVIDENCE OF CONSPIRACY.—Testimony of a conversation on Saturday evening between deceased and J, in which the name of the defendant was mentioned, and in which they said they wanted to see defendant on Monday, and to meet on Monday, does not establish *prima facie* a conspiracy between deceased and J against the defendant.
2. IBID.—JUDGE'S DISCRETION.—The judge did not err in excluding the declarations of an alleged conspirator offered in evidence in advance of any testimony sufficient to establish *prima facie* a conspiracy.
3. EVIDENCE—SELF-DEFENCE.—Evidence of a murderous attack upon the prisoner by M and J a short time before the homicide, was properly excluded when offered by the prisoner in support of his plea of self-defence, no conspiracy between M and J and the deceased having been shown.
4. DEGREE OF PROOF—SELF-DEFENCE.—There was no error in charging the jury that while the State was bound to prove the charge beyond any reasonable doubt, the defendant was only required to prove an affirmative defence, such as self-defence, by the preponderance of the evidence.
5. CHARGING JURIES—INSTRUCTIONS NOT REQUESTED.—An exception alleging error in failing to charge what had not been requested considered *ex gratia*, human life being involved.
6. GOOD CHARACTER—CHARGE ON FACTS.—It would have been error to charge a jury that the character of the prisoner, as shown by the testimony, should have great weight with them. He might properly have charged, if so requested, that good character might be considered by them in reaching their conclusion.

Before WITHERSPOON, J., Lexington, June, 1890.

This was an indictment against Fred. Brown for the murder of Lem Jackson. So much of the charge to the jury as has any bearing upon the matters excepted to was as follows:

A party who is charged with the crime of murder has the right to come in here and interpose what we call the plea of self-defence; that he did what he did, the taking of human life, in the exercise of the right of self-defence. That right, as I have already stated—the right of self-defence—does not exist under all circumstances; for instance, if a man is in fault in bringing about the difficulty. If I were to assault you, Mr. Foreman, and afterwards in the difficulty killed you, I could not set up, if I were brought up for trial, I could not avail myself of the plea of self defence. Why? Because I produced, brought on the difficulty, and the law says, under those circumstances, the assailant, the party who brings about the difficulty, cannot avail himself of this high privilege—the exercise of the right of self-defence.

As you have heard stated to-day, two things are necessary in order to establish the right of self defence. It must appear that the party who sets up this plea of self-defence, its affirmative, and whilst the State is bound to prove the guilt of the party accused, beyond a reasonable doubt, from the testimony, yet, when the plea of self defence is interposed, the party who interposes it, it is in the nature of an affirmative defence, and he must satisfy the jury upon that plea, to avail him by what we call preponderance of the evidence, greater weight of the evidence—that is, the weight of the evidence on that question, his right of self-defence. Are you satisfied by the preponderance of the evidence on that point that he is entitled to the protection of this plea of self-defence? If so, it is made out and it should avail him. If not, he cannot avail himself of the plea, unless the jury is satisfied on that point as to his plea of self defence by the preponderance of the evidence, the greater weight of the evidence.

If you conclude that the deceased, Lemuel Jackson, assaulted the prisoner at the bar, Fred. Brown, otherwise called Frederick Brown, and that he, Brown, was without fault in bringing about that difficulty or trouble, in provoking Lem Jackson to assault him, for you must conclude that Lem Jackson assaulted him

before he can claim the right to the protection under the plea of self defence; if you conclude that Lem Jackson assaulted Fred. Brown, then you must be satisfied that the assault was of such a character as to put a man of ordinary reason and firmness under the apprehension that he was placed in imminent peril of life, or great bodily harm; in other words, you must be satisfied, not only that Lem Jackson assaulted Fred. Brown, but, from the character of the assault, that it was of such a character as to necessitate Fred. Brown in doing what he did do—in other words, that the character of the assault made by Lem Jackson was of such a character as to place a man of ordinary reason and firmness under the conviction that his life was placed in imminent peril, or of great bodily harm. Whether that be the case or not, your conclusion or not, you are to deduce from the testimony in the case, in concluding whether or not he is guilty of murder, or whether he is guilty of manslaughter, or whether the plea of self-defence has been established and should avail him.

It is important and proper that you should consider under what circumstances did he go to the house. Did he go to the house of Lem Jackson, and, if so, under what circumstances? If he went there in a peaceable frame of mind, why there was no impropriety in it; but if he went there for the purpose of raising a row, or if he went in a peaceable frame of mind and after he got there raised and provoked a difficulty, raised a disturbance, he cannot avail himself of the plea of self-defence. Why? Because he was not without fault in bringing about the difficulty, and he must be without fault to avail himself; but he has the right to kill, if necessary, in preserving and protecting himself from the assault of another person. It is for you to say why he went there. If he went there in a peaceable frame of mind, simply for the adjustment of any trouble existing between them or not, hoping to have that difficulty adjusted friendly, or whether he went there for the purpose of having a difficulty, that is a matter entirely for you from the testimony.

You are the judges, and I do not propose to indicate any opinion whatever, but merely to direct your attention to that point in determining what was the motive that prompted the act of shooting—if you conclude Fred. Brown fired and took the life of

Lem Jackson. You apply the testimony in this case. First, ask yourselves the question : Is he guilty of murder, as charged by the State; did he fire with an evil intent to take the life of this man ? If you are so satisfied beyond a reasonable doubt, then your verdict should be murder, and sign your name in full. If you have a reasonable doubt, this reasonable doubt must be a substantial doubt, not a speculative doubt, a doubt arising in your mind in considering the testimony, in your honest, conscientious efforts, after a fair and impartial endeavor to arrive at the truth best you can ; if there be a doubt arising in your mind, why you cannot find him guilty of murder or manslaughter; or if you conclude that he fired in the exercise of the right of self-defence, he is entitled to the benefit of that, and your verdict should be "Not guilty." If you have no such reasonable doubt, if the State has satisfied you beyond a reasonable doubt that he is guilty of murder, your verdict should be guilty of murder. If you conclude he is not guilty of murder, and if the State has failed to satisfy you beyond a reasonable doubt that he is guilty of manslaughter—that is, that he went there and that he fired this gun, there being no necessity for it, that the circumstances were not such as to justify a man of ordinary reason and firmness to conclude that the assault was of such a character as to place him in imminent peril or of great bodily harm, but that he fired the gun under sudden provocation, but under circumstances that the law will not justify in the exercise of self-defence, but under sudden heat and passion, then he is guilty of manslaughter.

Defendant was convicted and sentenced to be hanged. He appealed on grounds which are sufficiently stated in the opinion of this court.

*Messrs. Meetze & Muller*, for appellant.

*Mr. Nelson*, solicitor, contra.

January 24, 1891. The opinion of the court was delivered by Mr. Justice McIver. In this case the defendant was indicted for and convicted of the murder of one Lem Jackson, called

by some of the witnesses Glen Jackson, and has appealed upon several grounds set out in the record. It seems that defendant rested his defence mainly on the plea of self-defence, alleging that the deceased had entered into a conspiracy with John Johnson and Mack Johnson, on the Sunday preceding the Monday on which the homicide was committed; and that he, being informed of such conspiracy, was compelled to fire the fatal shot in defence of his own life.

His first ground of appeal imputing error to the Circuit Judge in refusing to allow defendant's counsel to introduce testimony to show that such a conspiracy had been formed, is based upon an entire misconception of the rulings of the Circuit Judge. An examination of the "Case" shows conclusively that so far from refusing to receive testimony tending to show the existence of such conspiracy, the Circuit Judge distinctly ruled the contrary. In fact, defendant's counsel did offer testimony for the purpose of showing the conspiracy, and all that was ruled was that the testimony adduced was wholly insufficient to show even *prima facie* that there was any such conspiracy as that alleged; and in that ruling we entirely concur. The first witness offered to show such a conspiracy as that alleged was Jim Brown, who said: "I heard Lem and John (referring to said John Johnson) call Fred's name; what they were calling it about, I don't know. I hear them call Fred's name, and say that they wanted to see him on Monday; they wanted to meet on Monday—what it was, I don't know." This certainly was wholly insufficient to show even *prima facie* any conspiracy of any kind.

The only other witness for this purpose was the prisoner himself, who was offered to prove the conversation he had in jail, after the homicide was committed, with the said John Johnson, one of the alleged conspirators, which it was claimed would show that Johnson had told him that such a conspiracy had been formed. This testimony was very properly ruled out as mere hearsay, for until there was *prima facie* proof of the conspiracy, the declarations of one of the alleged conspirators against any one of the others was no more competent than the declarations of any third person, who was an entire stranger to the whole matter. The rule, as stated in 1 Greenleaf on Evi-

dence, section 111, is as follows: "A foundation must first be laid by proof sufficient in the opinion of the judge to establish *prima facie* a fact of conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact." And in the same section that eminent writer says: "Sometimes, for the sake of convenience, the acts or declarations of one are admitted in evidence before sufficient proof is given of the conspiracy; the prosecutor undertaking to furnish such proof in a subsequent stage of the cause. But this rests in the discretion of the judge, and is not permitted except under particular and urgent circumstances, lest the jury should be misled to infer the fact itself of the conspiracy from the declarations of strangers." And again he says in the same section, after a caution that the acts and declarations of one of the conspirators must be made or done during the pendency of the criminal enterprise and in furtherance of its objects: "If they took place at a subsequent period, and are therefore merely narratives of past occurrences, they are * * * to be rejected."

In view of the law as thus laid down by this standard author, we do not see how it is possible to question the correctness of the Circuit Judge's ruling. The evidence offered and excluded was not only "a narrative of past occurrences," but it was offered before any testimony had been adduced even tending to show that a conspiracy had ever existed. There was nothing to show that there were any such "particular and urgent circumstances" which may sometimes warrant a judge, in the exercise of his discretion, in permitting a departure from the usual and regular order of the proof upon the assurance that the preliminary proof would subsequently be furnished. But at all events, this is a matter which "rests in the discretion of the judge," which we think was properly exercised in this instance, and there certainly was no error of law in refusing to receive the declarations of one who was claimed *to have been* one of the conspirators. The case of *State* v. *Cardoza* (11 S. C., 195), relied on by appellant's counsel, is not applicable, for in that case there was some evidence of the existence of the conspiracy before the declarations of alleged co conspirators were received; and the fact that it came from an accomplice did not render it incompetent, but could only affect its credibility. And as it is the province of the Cir-

cuit Judge, in the first instance at least, to determine whether
there has been any *prima facie* evidence of the conspiracy, we
must assume that he so determined before receiving the declara-
tion of the alleged co-conspirators.    This disposes of the 3rd
ground.

The second ground of appeal, imputing error to the Circuit
Judge in refusing to allow defendant's counsel to introduce testi-
mony to show that the defendant had been attacked by
John Johnson and Mack Johnson with murderous wea-
pons, on the night the homicide was committed, and just
before it occurred, has nothing whatever to rest upon.    A care-
ful examination of the "Case" fails to show that any such evi-
dence was ever offered.    But even if it had been, it should have
been rejected, unless it had been previously shown that the de-
ceased had entered into a conspiracy with these persons to take
the life of the prisoner, or to do him some serious bodily harm.
Until such preliminary testimony had been introduced it was no
more competent to prove that an attack had been made upon the
prisoner by the persons named than to prove that he had been
attacked by a stranger.

The 4th ground of appeal is in these words: "Because his
honor erred in his charge to the jury when he says: 'When the
plea of self defence is interposed, the party who interposes
it, it is in the nature of an affirmative defence, and
he must satisfy the jury upon that plea to avail him by
what we call preponderance of evidence, greater weight of the
evidence, that in the weight of the evidence on that question his
right of self-defence.    Are you satisfied by the preponderance of
the evidence on that point that he is entitled to the protection of
this plea of self defence?' "    This quotation from the judge's
charge upon which this ground is based, constitutes only a por-
tion of a sentence, and is preceded by these words: "Whilst the
State is bound to prove the guilt of the party accused, beyond a
reasonable doubt, from the testimony, yet, when the plea of self-
defence is interposed," &c., as in the quotation as stated in the
ground of appeal.    From this statement it is obvious that the
Circuit Judge in the portion of the charge complained of, was
calling the attention of the jury to the distinction between the

degree of proof required from the prosecution and that required of the defence; that while the State was bound to prove the charge beyond any reasonable doubt, the defendant was only required to prove any affirmative defence which he might set up, such as *alibi*, insanity, or self-defence, not beyond a reasonable doubt, but simply by the preponderance of the evidence. This, therefore, so far from being unfavorable, was favorable to the defendant, and was strictly according to the law as settled by the case of *State* v. *Welsh* (29 S. C., 4), and the authorities therein cited.

The cases of *State* v. *Coleman* (6 S. C., 185) and *State* v. *Hopkins* (15 *Id.*, 153), do not apply, for those cases simply held that while the law presumes malice from the mere fact of intentional killing, yet when the circumstances under which the homicide was committed are brought out, there is no room for such presumption, and the State must prove the malice. Now, in this case it does not appear from the charge as set out in the "Case" that the Circuit Judge laid any stress whatever on the legal presumption arising from the mere fact of killing, but, on the contrary, explicitly instructed the jury that the State was bound to prove malice beyond a reasonable doubt; and unless this was done, the prisoner could not be convicted of murder. We desire to say that in considering this ground of appeal we have copied precisely the language as found in the printed record submitted to us, both in the fourth ground of appeal and in the charge of the judge, though it is very obvious that there are typographical errors in both, which, however, do not affect the sense, but simply produce awkwardness of expression; and it is but simply justice to the judge, as well as to the counsel for appellant, that we should make this statement.

It only remains to consider the 5th and last ground of appeal, which reads as follows: "Because there being a conflict between the testimony of Silas Jackson and Sally Jackson on the one part, and Fred. Brown on the other part, as to what happened at the house of Lem Jackson immediately preceding the homicide, and the materiality of Fred. Brown's statement as to his right of self-defence, and Fred. Brown having established a high character both for peaceableness and honesty, his honor should have charged the

jury that character of this kind, and under these circumstances should have great weight with them in coming to their conclusions." In answer to this ground it would be sufficient to say that it does not appear that the Circuit Judge was requested so to charge, and hence, under the well settled rule, his omission to do so cannot be imputed to him as error. But in a case of this gravity we do not desire to rest our conclusion upon this alone. Even if the judge had been requested to instruct the jury as suggested in this ground of appeal, we do not think it would have been error for him to have refused or omitted to do so. The question as to the weight of testimony is for the jury exclusively, and it would have been an invasion of their province for the judge to say to them that the character which the prisoner had established should have great weight with them. The utmost that could have been asked of him would have been to say to the jury that if they believed that the prisoner had established a good character, that would be a circumstance to be taken into consideration by them in forming their conclusion. See *State* v. *Tarrant*, 24 S. C., 593.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that court for the purpose of having a new day assigned for the execution of the sentence heretofore imposed.